UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE A. KAATZ,

    Plaintiff,

vs.

CHICKY'S PARADISE SALOON,
INC., a Michigan corporation,
STACY BRYANT, an individual,
and RODNEY POLANSKY,
an individual,

    Defendants.
_____/
Teresa J. Gorman (P61001)
Teresa J. Gorman, PLLC
Attorneys for Plaintiff
363 West Big Beaver Road, Suite 440
Troy, MI 48083
Tel:    (248) 457-6005
Fax:   (248) 689-3268
terigorman@aol.com
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff BRUCE A. KAATZ, by his attorneys, TERESA J. GORMAN, PLLC, for his Complaint, states as follows:

### JURISDICTIONAL ALLEGATIONS

1.    This suit is brought pursuant to Title II of the Americans With Disabilities Act, as amended, 42 U.S.C. §§12131, et seq., the Persons with Disabilities Civil Rights Act, MCL §§37.1101, et seq., and for other tort claims pursuant to Michigan common law.

2. This court has jurisdiction pursuant to 42 USC §2000e-5, 28 USC §1331, and 28 USC §1367(a).

3. Plaintiff is a citizen of the United States and resides in Almont, Michigan.

4. Defendant Chicky's Paradise Saloon, Inc. is a Michigan corporation doing business in Almont, Michigan.

5. Defendant Stacy Bryant is a female resident of Almont, Michigan.

6. Defendant Rodney Polansky is male resident of Almont, Michigan.

7. The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney fees.

8. The events giving rise to this cause of action occurred in Almont, Michigan, Lapeer County, Michigan, in the Eastern District of Michigan. Accordingly, venue lies in the United States District Court for the Eastern District of Michigan under 28 USC §1391(b).

## STATEMENT OF FACTS

9. Plaintiff repeats and realleges paragraphs 1-8.

10. Plaintiff is a 62 year old man.

11. Plaintiff is disabled as that term is defined by the Americans With Disabilities Act, 42 U.S.C. §§12101, et seq.

12. Defendant Chicky's Paradise Saloon, Inc. ("the saloon") is a place of public accommodation, as that term is defined by the Americans With Disabilities Act, 42 U.S.C. §§12101, et seq. and the Persons With Disabiltiies Civil Rights Act, MCL §§37.1101, et seq.

13. Defendant Stacy Bryant ("Bryant") is the owner and operator the saloon.

14. Defendant Rodney Polansky ("Polansky") is or was an employee of the saloon and/or Bryant.

15. Plaintiff has been under doctors' care since April 2011 for degenerative disc disease, disc bulges/herniations of his cervical and lumbar spine with myelopathy and chronic pain syndrome.

16. In April 2012, Plaintiff underwent lumbar laminectomy/fusion to help with his chronic pain and degenerative disc disease, and disc herniations with radiculopathy/myelopathy.

17. Plaintiff's April 2012 back surgery was moderately successful, his chronic pain was lessened, and he was better able to perform his activities of daily living with assist devices such as canes and braces.

18. In early 2013, Plaintiff's doctors recommended that Plaintiff use a service dog for assistance.

19. In the summer of 2013, Plaintiff's Labrador retriever, Maximus, became a Registered Service Animal with the Service Animal Registry of America, license # SARA C8691.

20. Plaintiff possesses the requisite documentation and Permit Access card identifying Maximus as a Registered Service Animal under the Service Animal Registry of America.

21. The United States Social Security Administration determinted Plaintiff to be completely disabled.

22 Plaintiff's doctors determined Plaintiff to be completely disabled.

23. Plaintiff's doctors confirm that he requires the assistance of a service dog, specifically Maximus, licensed and registered through the Service Animal Registry of America.

24. The State of Michigan deems Plaintiff's Labrador retriever, Maximus, as a Registered Service Animal.

25. On September 15, 2013, Plaintiff was invited by friends to attend a charity event at the saloon.

26. Plaintiff arrived at the saloon at approximately 4:30pm.

27. Plaintiff spent approximately 2 hours sitting with his friends in an outside tent area.

28. During the first 2 hours, Plaintiff and his service dog walked inside the saloon, placed an order, received the order, and took the drinks back outside to the tent.

29. At or around 6:30pm, Plaintiff's friends were ready to leave and offered to buy Plaintiff a beer inside the saloon because it was raining outside.

30. Plaintiff and his service dog entered the saloon where Plaintiff sat down on the bar stool closest to the door.

31. Plaintiff's service dog was leashed and laying on the floor by the bar stool.

32. The bartender served Plaintiff his beer, and as he took his first sip, he was approached by Defendant Polansky who advised him that Plaintiff was not "going to pull this shit with your dog" and advised that Plaintiff could stay but his service dog had to leave.

33. Plaintiff had been previously advised by Defendants that his dog was not welcome in the saloon.

34. Plaintiff informed Defendant Polansky that his dog was a licensed service dog and that he needed him at his side.

35. Plaintiff then produced the Service Animal Registry of America card identifying Maximus as a licensed and registered service dog.

36. Defendant Polansky grabbed the card out of Plaintiff's hand and left Plaintiff for a moment saying he would show the card to Bryant.

37. Defendant Polansky, now with Defendant Bryant and her father, then returned to where Plaintiff was sitting and told Plaintiff that both he and his service dog had to leave the saloon.

38. Plaintiff objected and indicated his intent to call the Almont police.

39. Defendant Polansky replied "no, you're going now", grabbed the back of Plaintiff's jacket, pulled Plaintiff backwards off of the barstool so that the barstool fell over and Plaintiff dropped to the floor.

40. Defendant Polansky then grabbed Plaintiff by the arm and attempted to drag him towards the door.

41. Plaintiff cried out in pain and screamed at Defendant Polansky to let go of him.

42. Plaintiff was unable to call the police because he had no cell phone coverage in the saloon, but someone else called the police.

43. While Plaintiff was lying on the floor, crying out in pain, Defendant Bryant's mother began hitting him in his chest with Permit Access card identifying Maximus as a Registered Service Animal under the Service Animal Registry of America, while yelling at Plaintiff "What is this? Is this like a Leader Dogs for the Blind card?"

5

44. The police arrived to find Plaintiff lying on the floor of the saloon unable to move.

45. The police requested an ambulance and Plaintiff was transported to Henry Ford Macomb Hospital.

46. Although Plaintiff had previously been slowly recovering from this earlier fusion surgery and maintained a tolerable level of continued chronic pain typical following such surgery, his condition and level of pain was exacerbated after he was thrown to the floor and dragged across the floor by Defendant Polansky.

47. Subsequent to being dropped to the floor and dragged across the floor by Defendant Polansky, Plaintiff's chronic pain level has been chronically elevated way above his baseline and was at most times intolerable.

48. Subsequent to being dropped to the floor and dragged across the floor by Defendant Polansky, Plaintiff's ability to perform his activities of daily living decreased dramatically and he was unable to walk short distances without his pain level elevating despite the assistance of canes and back braces.

49. In November 2013, Plaintiff underwent an MRI which showed multi-level stenosis and herniated discs, spanning C4-C7 in his neck.

50. Prior to being thrown to the floor and dragged across the floor by Defendant Polansky, Plaintiff did not suffer from any neck pain or neck injury.

51. In February 2014, Plaintiff underwent neck surgery in an attempt to correct the damage sustained by the September 15, 2013 battery to which he was subjected by Defendant Polansky.

**COUNT I**
**DISABILITY DISCRIMINATION IN VIOLATION OF**
**TITLE II OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED**

52. Plaintiff repeats and realleges paragraphs 1-51.

53. At all material times, Plaintiff was an individual subject to Title II of the Americans With Disabilities Act, as amended, 42 U.S.C. §§12131, et seq.

54. At all material times, Defendant Chicky's Paradise Saloon, Inc. a place of public accommodation subject to Title II of the Americans With Disabilities Act, as amended, 42 U.S.C. §§12131, et seq.

55. At all material times, Defendants Stacy Bryant and Rodney Polansky were persons subject to Title II of the Americans With Disabilities Act, as amended, 42 U.S.C. §§12131, et seq.

56. Defendants, by and through their agents, servants, and employees, denied Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service in whole or in part because Plaintiff is disabled and requires the use of a service dog.

57. Defendants' denying Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service in whole or in part because of Plaintiff's disability and use of a service dog violated Title II of the Americans With Disabilities Act, as amended, 42 U.S.C. §§12131, et seq.

58. Defendants were predisposed to discriminate wrongfully on the basis of disability and acted in accordance with that violative predisposition.

59. Defendants' wrongful actions and omissions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

60. As a direct and proximate result of Defendants' wrongful actions and omissions, Plaintiff has sustained and will continue to sustain damages including, but not limited to, physical injury, mental anguish, physical and emotional distress, humiliation and embarrassment, and other compensable injuries.

Wherefore, Plaintiff prays for Judgment against Defendants, jointly and severally, together with costs, interest, and attorney fees, as well as other relief that this Honorable Court deems just and equitable in the circumstances.

## COUNT II
## RETALIATION CONSPIRACY IN VIOLATION OF
## TITLE II OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED

61. Plaintiff repeats and realleges paragraphs 1-60.

62. Plaintiff opposed violations of Title II of the Americans With Disabilities Act, as amended.

63. Defendants wrongfully retaliated and wrongfully discriminated against Plaintiff because Plaintiff asserted his civil rights and opposed violations of Title II of the Americans With Disabilities Act, as amended.

64. This wrongful retaliation by Defendants would not have occurred had Plaintiff not engaged in protected activity pursuant to Title II of the Americans With Disabilities Act, as amended.

65. Defendants' conduct violated Title II of the Americans With Disabilities Act, as amended.

66. As a direct and proximate result of Defendants' wrongful actions and omissions, Plaintiff has sustained and will continue to sustain damages including, but not limited to, physical injury, mental anguish, physical and emotional distress, humiliation and embarrassment, and other compensable injuries.

Wherefore, Plaintiff prays for Judgment against Defendants, jointly and severally, together with costs, interest, and attorney fees, as well as other relief that this Honorable Court deems just and equitable in the circumstances.

## COUNT III
## DISABILITY DISCRIMINATION IN VIOLATION OF
## ARTICLE 3 OF THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

67. Plaintiff repeats and realleges paragraphs 1-66.

68. At all material times, Plaintiff was an individual subject to Article 3 of the Persons with Disabilities Civil Rights Act, MCL §37.1301.

69. At all material times, Defendant Chicky's Paradise Saloon, Inc. was a place of public accommodation subject to Article 3 of the Persons with Disabilities Civil Rights Act, MCL §37.2301(a).

70. At all material times, Defendants Stacy Bryant and Rodney Polansky were persons subject to Article 3 of the Persons with Disabilities Civil Rights Act, MCL §37.1302.

71. Defendants, by and through their agents, servants, and employees, denied Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service in whole or in part because Plaintiff is disabled and requires the use of a service dog.

72. Defendants denied Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service in whole or in part because Plaintiff is disabled and requires the use of a service dog.

73. Defendants' denying Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service in whole or in part because Plaintiff is disabled and requires the use of a service dog violated §37.1302(a) of the Persons With Disabilities Civil Rights Act.

74. Defendants were predisposed to discriminate wrongfully on the basis of disability and acted in accordance with that violative predisposition.

75. Defendants' wrongful actions and omissions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

76. As a direct and proximate result of Defendants' wrongful actions and omissions, Plaintiff has sustained and will continue to sustain damages including, but not limited to, physical injury, mental anguish, physical and emotional distress, humiliation and embarrassment, and other compensable injuries.

Wherefore, Plaintiff prays for Judgment against Defendants, jointly and severally, together with costs, interest, and attorney fees, as well as other relief that this Honorable Court deems just and equitable in the circumstances.

## COUNT IV
## RETALIATION CONSPIRACY
## IN VIOLATION OF ARTICLE 6 OF
## <u>THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT</u>

77. Plaintiff repeats and realleges paragraphs 1-76.

78. Plaintiff opposed violations of the Persons with Disabilities Civil Rights Act.

79. Defendants wrongfully retaliated and wrongfully discriminated against Plaintiff because Plaintiff asserted his civil rights and opposed violations of the Persons with Disabilities Civil Rights Act.

80. This wrongful retaliation by Defendants would not have occurred had Plaintiff not engaged in protected activity pursuant to the Persons with Disabilities Civil Rights Act.

81. Defendants' conduct violated §37.1602 of the Persons With Disabilities Civil Rights Act.

82. As a direct and proximate result of Defendants' wrongful actions and omissions, Plaintiff has sustained and will continue to sustain damages including, but not limited to, physical injury, mental anguish, physical and emotional distress, humiliation and embarrassment, and other compensable injuries.

Wherefore, Plaintiff prays for Judgment against Defendants, jointly and severally, together with costs, interest, and attorney fees, as well as other relief that this Honorable Court deems just and equitable in the circumstances.

## COUNT V
## CONSPIRACY AND CONCERTED ACTION

83. Plaintiff repeats and realleges paragraphs 1-82.

84. Defendants illegally, maliciously, and wrongfully conspired with one another with the intent to and for the illegal purpose of discriminating against Plaintiff, committing assault and battery against Plaintiff, and inflicting emotional distress on Plaintiff.

85. This conspiracy resulted in illegal, unlawful and tortious activity.

86. At all relevant times, Defendants engaged in concerted activities described above by express or implied agreement.

87. Plaintiff may not be able to identify all of the activities of Defendants due to the generic similarity of such activities as produced and promoted by these Defendants.

88. As a direct and proximate result of Defendants' wrongful actions and omissions, Plaintiff has sustained and will continue to sustain damages including, but not limited to, mental anguish, physical injury, physical and emotional distress, humiliation and embarrassment, and other compensable injuries.

89. Due to the concert of the action between the two individual Defendants, each is liable to Plaintiff for these injuries and damages even if there was no direct relation to the activity by that particular Defendant.

90. Defendants are liable to Plaintiff for all of his injuries and damages.

Wherefore, Plaintiff prays for Judgment against Defendants, jointly and severally, together with costs, interest, and attorney fees, as well as other relief that this Honorable Court deems just and equitable in the circumstances.

## COUNT VI
## NEGLIGENCE

91. Plaintiff repeats and realleges paragraphs 1-90.

92. Defendants owed Plaintiff a duty to conform to a specific standard of conduct to protect Plaintiff from unreasonable risk of injury.

93. Defendants breached their duty to Plaintiff.

94. Defendants knew, or through the exercise of reasonable care should have known, that their actions would likely result in injury to Plaintiff.

95. Plaintiff was injured by Defendants' actions.

96. Defendants are not entitled to absolute or qualified immunity.

97. As a direct and proximate result of Defendants' wrongful actions and omissions, Plaintiff has sustained and will continue to sustain damages including, but not limited to, mental anguish, physical and emotional distress, humiliation and embarrassment, and other compensable injuries.

Wherefore, Plaintiff prays for Judgment against Defendants, jointly and severally, together with costs, interest, and attorney fees, as well as other relief that this Honorable Court deems just and equitable in the circumstances.

## COUNT VII
## ASSAULT AND BATTERY

98. Plaintiff repeats and realleges paragraphs 1-97.

99. Defendant Polansky's acts of subjecting Plaintiff to unwelcome touching, as outlined above, constitute battery.

100. Defendant Polansky's acts of threatening Plaintiff with battery, as outlined above, constitute assault.

101. As a direct and proximate result of Defendant Polansky's unlawful actions, Plaintiff suffered physical and emotional injury.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

102. Plaintiff repeats and realleges paragraphs 1-101.

103. Defendants' conduct as outlined above was intentional.

104. Defendants' conduct as outlined above was extreme, outrageous, and of such character as not to be tolerated by a civilized society.

105. Defendants' conduct resulted in severe and serious emotional distress.

106. As a direct and proximate result of Defendants' wrongful actions and omissions, Plaintiff has sustained and will continue to sustain damages including, but not limited to, physical injury, mental anguish, physical and emotional distress, humiliation and embarrassment, and other compensable injuries.

Wherefore, Plaintiff prays for Judgment against Defendants, jointly and severally, together with costs, interest, and attorney fees, as well as other relief that this Honorable Court deems just and equitable in the circumstances.

WHEREFORE, Plaintiff BRUCE A. KAATZ prays that this Honorable Court grant the following remedies:

A. Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of Title II of the Americans With Disabilities Act, as amended, 42 U.S.C. §§12131, et seq., the Persons with Disabilities Civil Right Act, MCL §§37.1101, et seq., and Michigan common law.

B. Award Plaintiff compensatory damages;

C. Award Plaintiff punitive damages;

D. Award Plaintiff reasonable attorney's fees, costs, and interest;

E. Award Plaintiff such other relief as this Court deems just and proper.

        s/ Teresa J. Gorman
        Teresa J. Gorman PLLC
        Attorney for Plaintiff
        393 West Big Beaver Road, Suite 440
        Troy, MI 48083
        Tel: (248) 457-6005
        Fax: (248) 689-3268
        terigorman@aol.com

## **JURY DEMAND**

Plaintiff demands a jury trial.

        s/ Teresa J. Gorman
        Teresa J. Gorman PLLC
        Attorney for Plaintiff
        393 West Big Beaver Road, Suite 440
        Troy, MI 48083
        Tel: (248) 457-6005
        Fax: (248) 689-3268
        terigorman@aol.com